Good morning, Your Honors. I would like to take four minutes, allow four minutes for the EEOC's counsel, and then take two minutes for rebuttal, if I may. Okay, and would you introduce yourself, please? Yes, Your Honor. My name is Edmundo Urbina, and I'm here on behalf of the plaintiff, Gerald Kirkish. May it please the Court. Your Honors, today we're asking that the Court overturn the district court's grant of summary judgment for defendant on plaintiff's claims that defendant violated the ADA's prohibitions against disability-related inquiries and terminated plaintiff because it regarded him as disabled. With regard to the first issue, the Ninth Circuit has had two decisions. What was the nature of the disability that you contend Mesa regarded Mr. Kirkish as suffering from? They regarded him as disabled in his ability to think or concentrate because they believed that the medications that he was using caused a distinct change in his behavior, that it was affecting his ability to concentrate and think, and that it was affecting his That's basically what they said, Your Honor, that they suspected that the medications were causing the problems and were concerned about his impaired state might cause him to injure himself or someone else. This was actually in... Counsel, assuming for the moment that we didn't agree that he actually has a disability, he doesn't think he does, and they didn't think so either, let me ask something about the inquiry. The inquiry seems like a very difficult area. Let me give you a hypothetical, not your case necessarily. Let's say an employee isn't asked by anybody, but he lets everybody know, his supervisors, his fellow employees, that he is taking prescription pain medications for whatever reason. He just tells everybody that's what he's doing. The employer, the boss, hears that, calls his insurance company and says, Listen, I've got a guy taking prescription pain medication. He's told us that. I didn't ask him. He just says that. What do we have to do to make sure he can still be insured under the policy? And the insurer says, You better get a release from his doctor or at least find out what kind of meds he's taking, what kind of pain med it is, prescription pain med. Okay? So the employer says, Get me a release from your doctor. Now, just take that narrow set of facts. Has he violated the ADA then? I believe so, Your Honor. Okay. Because? Because this Court has repeatedly stated that the standard for medical inquiries is a high one. We're talking about business necessity. We're talking about licensing. He can't be insured if he's taking pain medications unless they don't affect driving. But that begs the question. He's taking prescription pain medication. But that begs the question. Everybody and his dog knows that prescription pain medications, in general, if you take them, can affect your driving. I've never seen one where they didn't have that on their package inserts and such. So all the employer says is, Just have your doctor tell me you're safe to drive. That's all I want to know. If you don't do that, I can't get insurance. Let's say that's the scenario. That begs the question, Your Honor. I don't think I'm begging any questions. Well, in order to do that. I'm giving you a hypothetical. Which part of that begs the question? In order to say, Well, we need to determine whether or not you're insured, the reason that you're determining whether or not someone is insured is because you're trying to figure out whether that person has a problem that would. No, the person's already told you without being asked. I'm taking prescription pain medications. And the insurer, in general, says, People are taking prescription pain medications. I ain't going to insure unless I have some release that indicates it's okay. I don't believe that the insurer can cause an employer to violate the terms of the ADA. So he has to go bare? I'm sorry? So then you sue the insurer or the employer goes bare? Well. Or that's just tough luck. Is that right? I mean, Your Honor, the problem is that what the courts have said, and this Court has said, that making a medical or a disability-related medical inquiry is a violation of the law unless you have, unless it is business-related and there's a. Counsel, I mean, if a man or woman has to drive a car in order to perform the ordinary tasks of his or her work, isn't it clearly business-related to ask the person, Is there any reason that you couldn't safely drive a car? And if an accurate answer to that question is, Well, I'm taking a drug called Neurontin and the webpage for Pfizer's Neurontin, which is, I guess they call it Gabapentin, that you aren't supposed to drive a car, that that's a legitimate inquiry? Well, Your Honor, in some cases, some people are affected by Neurontin. Others, such as Mr. Kirkus, have never. So isn't, following up on Judge Fernandez's question, isn't the answer to that, because we're talking about inquiry notes. We're not talking about actual knowledge. Isn't an employer on inquiry notice that his or her employee may be a danger to the employment if they know they're on Gabapentin? And isn't the way to follow up on that inquiry notice to get a medical release from the employee? Your Honor, this Court has said, just said last year in Brownfield v. City of Yakima, that the business necessity standard may be met even before an employee's work performance goes down if there is significant evidence of a problem. In order to do a medical inquiry, you have to have the standard. Are you aware of any decision of the Ninth Circuit that says that an employee's employer's reasonable suspicion that his or her employee may be dangerous to the public in the ordinary course of his or her employment is not entitled to follow up? Well, what the Brownfield decision said, Your Honor, the Brownfield decision was deciding whether or not the Yin decision, the Yin decision where the Court said that when an employee's performance has had a substantial and injurious, I mean, health problems have had a substantial and injurious impact on an employee's job performance, whether that was the only time that an employer could make, could have a medical inquiry, and they said no. But you have to have significant evidence of a problem. If not, Your Honor, then you don't meet the high burden that this Court has set. In both Yin and Brownfield, there was evidence of problems that were obvious to the employers and justified the inquiries that were made here. Now, let's take the Brownfield case, which involved a police officer who was behaving very erratically. Could the police department have inquired from the outset before he was hired whether he was taking any medications that might impair his driving? Well, that would implicate a different part of the ADA, Your Honor, at the application stage. 12B12112B4A only deals with current employees. At the application stage, I can't tell you. All right. So let's change the idea. The police department forgot to ask this. At some point, they send around a notice to all of their employees saying, if you are taking any medication that may impair your driving, please let us know. No, sir. Your Honor, I think that the case law is clear. The police department simply has to let people who may be impaired drive their cars? Well, but that's making an assumption that people – I'm not understanding the question. They have to have seen something that would make them believe that the employee was impaired. I mean, we have to let people drive police cars who may be impaired because we can't ask that question until we have evidence that they're actually driving impaired? Are you suggesting, sir, that there has been something for them to see the person impaired? In other words, they have seen some evidence? No. They're concerned from the outset. They want to know from all of their employees whether there is a problem, and they're trying to anticipate this because the police officers drive thousands of miles a month. That would violate the ADA, Your Honor. It would violate the ADA because the ADA says you can't make disability – you can't make inquiries. Are you suggesting there's some kind of a first-bite rule here, that an employer whose employees in the ordinary course of their employment engage in hazardous activities, that they have to kill somebody before you can make an inquiry? No, Your Honor. But in Brownfield, the court actually – this Court actually said there has to be significant evidence that would cause a reasonable person to inquire as to whether the employee is still capable of performing their job. In a police situation, you're – there are situations like police situations in which the courts may give leeway, and you see that across the country, some leeway. So you don't – you don't – Brownfield was not a case involving potential hazard to the public. You're not drawing any distinction between employment that does involve risk to the public and employment that does not? In cases involving police officers, teachers who deal with children. What about car salesmen who drive all around the city? Unless they have seen something in Mr. Kirkish that suggested that he had a problem, they couldn't simply say, because you take prescription medications, we have the right to know what prescriptions. What if typical people who typically take that specific medication aren't supposed to drive? That's not the case, Your Honor. The doctor, Mr. Kirkish's doctor testified in this case that some people have – just like some people have a lack of – But he wasn't prepared to give the man a release. He wasn't prepared to authorize him to drive. He wouldn't give a blanket statement saying, I don't know what Mr. Kirkish is taking the pills the way he's supposed to, then he's fine. But I can't certify that he is. He could be going home and taking 10 of those pills, because some people do. I'm not prepared to certify. Counsel, we're over your 10 minutes. Maybe you want to give the EEOC a chance? Yes, sir. Counsel, I'm going to – I'm going to – we've taken up a lot of your time. I'm going to allow three minutes to the EEOC, and I'm going to allow one minute for rebuttal. Thank you, Your Honor. Thank you, Your Honor. I appreciate that. Barbara Sloan for the EEOC. Good morning. I think I'll just focus on the questions you've asked. The one thing I want to stress is the burden of proof here. The employer has the burden of proof. It's a summary judgment. It's an affirmative defense. So a summary judgment for the employer should be as rare a summary judgment for a plaintiff as in a normal case. There has to be evidence that no reasonable jury would be compelled to find for the plaintiff, for the defendant here. I think that's important. Addressing your – But isn't it important in reaching that point about burdens of proof to identify what it is that needs to be proved? Absolutely. And here we're talking not about actual knowledge. We're talking about inquiry notice. What in the law is – Well, the – To look into the question. And here, how can you say that the employer wasn't on inquiry to look into the question whether this man could safely drive an automobile? Well, in Brownfield, which, by the way, did involve a job that involved danger to the public, it's a cop, the court said that there has to be good reason to doubt the individual's ability to do essential job functions. What we have here is that this employee was taking medication the entire time he was working there. That's all they knew. He was taking the medication the whole time he was working there, never had a problem. He had two lapses of memory, which another employee did, too, and he forgot a name, which, if that were enough to cause medical inquiry for me, I'd be – they'd be asking, making medical inquiries all the time. I don't have a good memory for names. This guy said he didn't either. He always puts it in the computer. If you forget that problem, though, I'd like to come back to what I asked in the first place in a hypothetical. What do we do with the fact that he told everybody he was on pain medication? The employer calls an insurance company and says, look, this guy's on pain meds. What should we do? Okay. Insurance company says he's on pain meds. We're not going to insure that guy unless you can get a release. And, by the way, they said they wouldn't insure him finally. Well, I think, first of all, I think the fact that – I think there's a critical difference in your hypothetical, Your Honor, in that there was no – arguably, there's no medical inquiry in your hypothetical. The employee has provided all of the information that the employer needs. That's not this case. This employee told everybody that he was taking prescription pain medications. We know that. Well, actually, Your Honor, I think a jury could find that's not what happened. As I understand it, he answered Mr. Treese's questions. When Mr. Treese saw him taking pain meds, he said, what are you doing? And he said, I'm taking pain meds. But he'd been taking them for four years. According to the district judge, I don't know if you've got a different record or something, according to the district judge, the district judge says that throughout this time he was perfectly open with his fellow employees and his supervisors that he had this problem and he was taking prescription pain medication for it. That's what the district judge said. For the whole four years and nothing – the only thing that changed, Your Honor, is he made a mistake. Now, my question, now we know that he's taking prescription pain medications and the employer now calls the insurance company and they say, we won't insure you unless you get a release. And you say that's no – let's say that's all that happens. I think that that might be a business necessity, Your Honor. But I – if the employer had – that's not a medical inquiry. It's kind of outside the statute. This is a statute that's designed. It says unless you get a release. So he goes – they go back to the employee and say, will you get me a release? And the doctor says, no way. But, Your Honor, that is not a medical inquiry situation. They haven't asked anything. So the inquiry here is when the doctor won't give the release or he won't ask for one or whatever, they say, well, then what are you taking? That's their – that's where they follow up, right? That's where they – and they – I also think, Your Honor, that they ask the doctor the wrong question. It's not whether this doctor can certify this guy can drive safely. This guy's – the doctor's no evidence the doctor's ever even seen the guy drive, with or without meds. The question is, have you observed any side effects? Has this employee – has this – has your patient observed – have you observed or has he reported that he's experiencing any side effects? What I'm asking counsel, if Mesa asks the doctor the right question, have you – have  And if he goes back to the insurance company and says, we've talked to his doctor, we've talked to the employee, we haven't seen anything, and the doctor says he hasn't observed anything, and the insurance company says that's not good enough, we're not going to accept this risk unless we have a doctor who says he's safe to drive. Now, what do we do? That's a really tough question, Your Honor, but it's not this case. This case is the situation. And I think it's – another little detail here is that they ask the guy what he's taken, he says Neurontin. The insurer does research into Neurontin, and they found out, I'm sure, because I did, that it's principally an anti-seizure drug. So the insurer says, whoa, this guy's taken an anti-seizure drug. We want the doctor to certify that he's safe. Not – we don't know why. Maybe because they thought he had seizures. And wouldn't that be a reasonable inquiry for somebody who's driving – whose responsibility is to drive cars? I think if you – this Court has made very clear that the standard is if you have good reason to doubt the individual's abilities. This guy's driving for four years on the same meds. But a seizure is a chaotic – is a chaotic episode. This is – this is not something that's announced. It's not something that you can – that you can account for. And you just wonder what Mesa – what kind of liability Mesa might incur if they allowed somebody to drive under those conditions, and he had a seizure, and somebody got injured, and came back to Mesa and said, did you know he was taking this drug? He said, yes, we did. I agree, Your Honor. If it were – if he truly had seizures and somehow had managed to get a driver's license in spite of the fact that he – I mean, what they want – if what they want is the doctor to say – It gets us to, I think, Judge Singleton's one-free-buy rule. That is, that you're entitled to one free – one free seizure, and then after that, Mesa has problems. No, I don't think that's correct, Your Honor. First of all, you can't – normally can't get a driver's license unless you've been seizure-free for X number of months or years. And if what they want is the doctor to say, this guy's seizure-free, that's what they should ask him. And probably he could have given that. And I'm not defending the doctor here, Your Honor. I think that a better – you know, a doctor might have been able to answer this question and relieve everybody's concern. I said it looked like the doctor was concerned about his own liability. I agree with you. But the question he was asked, can you guarantee this guy will never have an accident, I think that if that's what he has to certify to get the release, he's not going to – no doctor's going to give that. Counsel, one of the problems here is that insurance companies are not going to focus on individuals. They're going to focus on statistics. They're going to focus on populations. And the population that uses this neurontin or gabapentin, the population is one that is a significant side effect, has trouble driving. Why – what I can't understand is why that doesn't meet the minimum threshold of inquiry notice. Granted, it's not absolute knowledge. I know this person is dangerous. But isn't it over the threshold of inquiry? Your Honor, they didn't know he was taking neurontin. All they knew is he was taking medication for his feet. They knew he was taking pain medication. They wanted to know what kind. He said, I'm not going to tell you, but I'm going to have the doctor. The doctor fools around and finally the doctor tells them that it's neurontin. So – But let's focus on Mr. Treece, Your Honor. What did the company know? Mr. Treece said, I knew he was taking pain meds. I couldn't think of any other reason why he made these two mistakes. That's what the company knew. That's what caused the company to ask these, what I would call, a jury could – I would say a jury could find were not appropriate questions under the statute. All they knew was that he was taking pain medications, and Mr. Treece thought that anybody taking pain medications, whoa, that must be why he made two mistakes. Two mistakes, Your Honor. Why isn't that a reasonable inquiry? If he knows, if he knows that he's taking pain medications and he has observed a change in his behavior, something that's uncharacteristic for him. It's not that we don't all have memory lapses. It's that this was unusual for Mr. Kerkish. He was an excellent employee. He was a terrific salesman. Well, you know, Mr. Treece has two affidavits, Your Honor. And he just says, I couldn't think of any reason besides the meds why he made a mistake. Whereas, in fact, of course there are lots of reasons why he might have made the mistake. He might have been short on sleep. He might have been trying to close the deal quick. Certainly. But it raises the question as to whether he's even entitled to ask the questions. I don't think that's a – I think a jury would not be compelled to find that based on that information, the company had good reason to doubt the employee's ability to drive safely. That's what the – that's the burden here. The jury has to be compelled to find based on this evidence. And I don't think the summary judgment was appropriate under those circumstances. In other words, we're not talking about inquiry notice. We're talking about absolute certainty. And unless the fellow is dangerous beyond reasonable doubt, they can't even ask the initial questions? Your Honor, that's your – that's the Ninth Circuit standard. The company had good reason to doubt the individual's ability to do essential job functions. Good reason to doubt. Here, the guy's been taking pain medications the whole time he's there. That's important. Same medication for four years. And doesn't the record show he's increased? Didn't he tell them he was taking more? Only after they asked him. They didn't know. What they knew, Your Honor, we have to look at what the company knew. The company knew he was taking pain meds, and he had been taking them for years, and the company made two mistakes, that other employees made the same mistakes, and he forgot a name. That's what the company had. I would say, Your Honor, if that is good reason – if jury would be compelled to find that that is good reason to doubt the individual's ability to do essential job functions, then just about anything would be enough. I understand the concern with safety. That's a very legitimate concern. But what this provision is – You're going into another argument now, it sounds like. Okay. I just want to say that what – We are 25 minutes into your 10-minute time. I'm sorry. I just want to focus on – I want the Court to remember what the purpose of this provision is. It's prophylactic. It's to prevent visceral responses. And that's what, arguably, a jury could find happened here. Okay. Thank you, Ms. Sloan. Mr. Crouch. May it please the Court, Thomas Crouch on behalf of Mesa Imports. The provision at issue here is one that prohibits generally an employer from making inquiries into whether an employee has a disability or its nature and extent. Congress clearly understood that there are circumstances, however, under which an employer is going to have to make such inquiries, and it provided for the job-related consistent with business necessity defense. I'm not sure we heard that phrase this morning so far. The trial court, I think, made a uncontroversial ruling that under the facts of this case, the undisputed facts of this case, the employer was put on notice that one of its employees who had been discussing his medications may pose a potential threat when it comes to driving safely. As the Court has observed, it contacted its insurer, who basically said, have the gentleman's doctor provide a certification that it's safe for him to drive. The legitimacy of that inquiry, the reasonableness, if you will, of that inquiry is demonstrated no better than by the outcome of that inquiry, which was the doctor advising the employer that there are severe risks and hazards when it comes to driving while under this medication. The employer did not go off on a great fishing expedition to try to find whether its employee was disabled or not. It had a legitimate business need. Roberts. I'd like to take you to the statute. So if you'll turn to 121112d4a, the prohibited examinations and inquiries. As I read that statute, there are two parts. First of all, there's a prohibition. A covered entity shall not. And that's the medical inquiry prohibition. Then there's an unless clause, unless such examination or inquiry is shown to be job-related and consistent with business necessity. Is your contention that MESA is entitled to the business necessity defense? Or are you contending that you did not violate the shall not inquire portion of that as well? Yes on both of those. No, you're going to tell us that you neither made a prohibited inquiry and that if you did, you had a business necessity anyway. We move for summary judgment on the business necessity defense. I noted in my brief that we don't concede that that inquiry at the outset was one that was prohibited. But in this case, it is so clear that the inquiry that was made was job-related and consistent with business necessity that we're entitled to judgment as a matter of law in the medical inquiry claim. I don't think that the inquiry here was one that was likely to lead to the disclosure of information regarding a disability. This was a simple question after an employee had raised a concern about safety. It's a simple question. What are the medications that you're taking and are you safe to drive our vehicles? Because your position requires us to put you behind the wheel. I don't think that meets the likely to disclose. Now, I'm sure the EEOC might think otherwise. Their brief said it would be you twisted the phrase a little bit from their own regulations and said any inquiry that may result in disclosure is one that's prohibited. I don't think that's what their own regulations say, nor do I think that's what Congress intended with the statute. So to answer your question, Your Honor. Are you saying that their concern, let's say, is and always has been if somebody is taking pain meds, then that person might be a driving problem? And even if they didn't think so, their insurer does, correct? I'm sorry. I didn't hear the last part. Even if the company wasn't worried about it, the insurance company is, and their business requires insurance, which makes some sense. Is that your position, I take it? Yes, Your Honor, both of those. Let me ask you this. If that's true, why is it that this guy is, according to the record anyway, this guy is making it perfectly obvious for four years that he's taking pain meds? He's told everybody that. Supervisors don't care. I mean, they say it was just sort of common knowledge. She just gave it out like peanuts. Supervisors don't care and players don't care. Nobody cares. He's taking pain meds. How come all of a sudden they got really uptight about his driving? Because several employees noticed a change in his behavior. Let's forget the behavior thing because you're trying, in some sense, you've been trying to get away from the behavior thing. I mean, the behavior thing didn't amount to a row of beans, actually. But because of that, the employer, all this time this guy's taking pain meds, the employer doesn't care. He can drive to his heart's content on his prescription pain meds. But all of a sudden, because he misses a couple of, he forgets a name once, heaven help us all, he forgets a name once, all of a sudden they're worried about his driving? Well, it's not just, it's just not all of a sudden. It's Mr. Treece kind of going to management and expressing a concern over that. This is some gigantic corporation. The supervisors don't talk to management usually. I mean, it's like General Motors or something. They don't talk to the bosses. Your Honor, if. Is it a car dealership where people kind of, it's a little smaller than that. I don't know the size of it. It's not a massive dealership by any means, but employers have common law duties of care. And essentially what happened here was an employee went to upper management and expresses a safety concern. Now, what does common law standard of care or duty of care require? It requires you to make some inquiry into whether there is, in fact, a safety hazard. And if they were to put their head in the sand and ignore that, they wouldn't be complying with the standard duty of care under common law. But before this, even though for four years he's been brooding about and letting everybody in the dealership know that he's taking pain meds, management didn't know that because they're too abstracted from the floor, from the sales floor? Nobody had expressed a concern. I'm not talking about their concern. I'm talking about whether they knew he was taking prescription pain medications. Management? You're saying no, they didn't know that. Well, he identified six particular employees with whom he had spoken over a period of time, and I believe those six may have included management. So management knew he was taking pain meds. Yes. But all he was taking prescription pain meds didn't bother them that he was driving a car around, correct? During that period of time, nobody had expressed any concern. Got you. Thank you. Anything further to counsel? No. Okay. I'll just ask for affirmation. Thank you. Thank you very much. Mr. Rubin, I've allowed you another minute. Your Honor, I just want to make sure that you understand the facts of this case. There are no seizures incidents in this case, nothing about seizures in this case. Under state law, an employer has a duty to protect against an unreasonable risk, unreasonable risk, not any foreseeable risk. In this case, it is undisputed that prior to the spring of 2007, they had no issues with Mr. Kirkish whatsoever with his performance. Mr. Kirkish drove during the entire time that he was working there, and he was on Neurontin during the entire time that he was working there. Now, they did not know that he was on Neurontin until much later, okay? They did not know until depositions that he had spoken with other employees about this. The only employees that raised anything about this was Mr. Treese, and I'll explain his knowledge momentarily, and Mr. Bauman. You're down to your last five seconds. Okay. Your Honor, a jury could find that they did not have reason, good reason, to inquire into his medications in this case. Okay. Thank you. We appreciate the arguments from all counsel in this very interesting case. Kirkish is submitted.
judges: Singleton, Fernandez, Bybee